**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
        *Plaintiff-Appellee,*

v.

JERALD ELMO BROBST,
        *Defendant-Appellant.*

No. 07-30284

D.C. No.
CR-06-00055-DWM

OPINION

Appeal from the United States District Court
for the District of Montana
Donald W. Molloy, Chief District Judge, Presiding

Argued and Submitted
July 9, 2008—Seattle, Washington

Filed March 9, 2009

Before: Richard R. Clifton and N. Randy Smith,
Circuit Judges, and Brian E. Sandoval,* District Judge.

Opinion by Judge N.R. Smith

---

*The Honorable Brian E. Sandoval, United States District Judge for the
District of Nevada, sitting by designation.

2835

## COUNSEL

Thomas J. Phalen (argued), Phoenix, Arizona, for the defendant-appellant.

Eric B. Wolff (argued), Assistant United States Attorney, for the plaintiff-appellee.

**OPINION**

N.R. SMITH, Circuit Judge:

Whether or not a search and seizure or a warrantless arrest is reasonable, within the meaning of the Fourth Amendment, depends on the traditional standards of reasonableness and not the law of a particular state. Therefore, we conclude Brobst's constitutional rights were not violated, because (1) the search warrant described the place and things to be searched and seized with sufficient particularity; (2) probable cause existed for Brobst's arrest; (3) Brobst's post arrest statements were admissible; (4) the document the prosecutor failed to produce was not material to Brobst's conviction; and (5) the district court did not improperly shift the burden of proof to Brobst during trial.

Brobst also appeals his sentence, arguing that his simultaneous conviction and concurrent sentences for both receipt and possession of child pornography violated the Double Jeopardy Clause.

We have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm his conviction, vacate his sentence, and remand.

## I. Factual and Procedural Background

On July 11, 2006, Jerald Brobst hired Ken Gerg to perform some cabinet work at Brobst's residence, located at 31 Driftwood Lane, in Woods Bay, Montana. While Brobst was away, Gerg performed the work. While performing the work, Gerg found child pornography in Brobst's home.

Finding the pornography, Gerg reported it to Lake County Sheriff's Deputy Kim Leibenguth. Gerg told Deputy Leibenguth that Brobst had a photograph of a naked girl, six to seven years old, in a sexual position. Gerg said that the photograph had been printed from the internet, because it had

internet-type markings on it. Upon seeing the photograph, Gerg became nervous and put it back under the filing cabinet (where he found it). However, Gerg also saw other papers (which he suspected contained additional photographs), but he did not inspect them. Gerg provided Deputy Leibenguth with the address of Brobst's home, but did not provide her with a map or directions.

Based upon this information, Detective Daniel Yonkin drafted an affidavit for a search warrant. The warrant described the residence as a "single story, single family, ranch style dwelling with shingle roof, located at 31 Driftwood Lane, Woods Bay, Montana." The warrant provided for the search and seizure of "photographs depicting children engaged in actual or simulated sexual conduct, computers, compact disks, floppy disks, hard drives, memory cards, printers, and other portable digital devices, DVDs, and video tapes." A magistrate judge approved the warrant based upon the information set forth in the application.

After obtaining the warrant, Detective Yonkin and Detective Leibenguth drove to Brobst's residence. Both detectives dressed in plain clothes. Detective Yonkin carried a concealed weapon. An armed and uniformed officer, Deputy Lance Ewers, followed the officers in a patrol vehicle. Upon arrival, Detective Yonkin remarked a new address, 32877 Driftwood Lane, posted on the property. However, they also saw Brobst's name on a tree and on the mailbox in front of the residence. (Detective Yonkin additionally testified that Brobst's name also appeared on a wishing well in front of the residence.) The property had two separate residences and a garage, all of which were single story, ranch style dwellings with shingle roofs. Two other ranch style houses were also located on Driftwood Lane.

Because of the posting 32877 Driftwood Lane, the detectives spoke to "neighbors" to confirm that Brobst lived there. The neighbors confirmed the residence was Brobst's resi-

dence. Detective Yonkin also obtained a tax/property map that showed the piece of property belonged to Brobst. During the trial, Detective Yonkin disclosed that he (1) called Lake County sheriff dispatch, without success, to "cross-check" the 31 Driftwood Lane address and (2) tried to verify the ownership of a vehicle parked next to the residence, but again received no information.

Brobst was not at his residence when the officers arrived, so the officers entered through an open window. The officers found the cabinet identified by Gerg and located 28 pages of printed material, including photographs of children engaged in sexual conduct.

Brobst and a friend arrived at Brobst's residence while the officers were searching. Upon their arrival, Deputy Ewers approached Brobst outside of the house and stated, "you need to come with me" to speak with Detective Yonkin. Brobst then went with Deputy Ewers inside the residence. When Brobst started talking with Detective Yonkin, Deputy Ewers returned to the front door to watch Brobst's friend, who remained in the vehicle. Detective Yonkin explained to Brobst that the officers had a search warrant for the residence and provided Brobst with a copy of it. Detective Yonkin also told Brobst the officers found child pornography in his bedroom and asked Brobst if it were his. Brobst, without the benefit of *Miranda* warnings, stated that he owned the house, thus the materials must also be his. The entire conversation lasted approximately two minutes.

After Brobst admitted ownership of the materials, Detective Yonkin placed him under arrest. Officer Ewers took Brobst into custody and transported him to the Detention Center. Approximately two hours later, Detective Yonkin read Brobst his *Miranda* rights. Brobst also signed a *Miranda* waiver and agreed to speak to Detective Yonkin. Detective Yonkin then conducted a recorded interview. During the interview, Brobst admitted purchasing child pornography for approximately

three years. Brobst also admitted that, some years ago, he printed the photographs that the officers found. While Brobst was being interviewed, his attorney called and requested that the interview cease. At that time, Brobst (after being advised of his attorney's advice) ended the interview.

On October 20, 2006, a federal grand jury indicted Brobst on three counts: (1) receipt of child pornography in interstate commerce, 18 U.S.C. § 2252A(a)(2); (2) possession of child pornography, 18 U.S.C. § 2252A(a)(5)(B); and (3) forfeiture of property used to commit the offenses, 18 U.S.C. § 2253(a). Relevant to this appeal, Brobst filed four motions to suppress in the federal district court. The motions to suppress alleged: (1) the lack of particularity of the warrant; (2) the insufficient probable cause for seizure of various items of evidence, including his computer; (3) the suppression of Brobst's pre-arrest statements made while he was "in custody;" and (4) the admissibility of Brobst's *Mirandized* statements made after a warrantless arrest. On February 6, 2007, the district court denied three of the motions to suppress, finding: (1) the warrant was sufficient notwithstanding the use of the former address for Brobst's residence; (2) the officers had probable cause to believe that Brobst was engaged in child pornography offenses involving his computer; and (3) the admissibility of Brobst's *Mirandized* statements were "predicated on a finding that the search warrant was invalid." The district court, however, set a hearing on the "in custody" issue.

A magistrate judge heard the remaining motion to suppress and recommended that the district court deny the motion. The district court adopted the recommendation and held that "Brobst's freedom of movement was not restrained to the degree associated with a formal arrest and a reasonable person in his situation would have understood that he was free to leave."

Following a bench trial, the district court found Brobst guilty of all three counts. After his convictions for the child

pornography offenses, Brobst appealed (1) the denial of his four suppression motions (asserting in part that Montana law applies to the search, seizure and arrest) and (2) the denial of his motion to dismiss the indictment or motion to reconsider (made during trial) based upon the late disclosure of material information. Brobst also asserts the district court improperly shifted the burden of proof during the bench trial.

## II.    Application of State or Federal Law

**[1]** Brobst argues that we must look to Montana law, not federal law, to determine whether these seizures violate the Fourth Amendment to the Constitution. Specifically, Brobst argues that we should apply the language in *Ker v. California*, 374 U.S. 23 (1963) (plurality opinion), which states that courts should determine the lawfulness of arrests by reference to state law. 374 U.S. at 37. Thus, Brobst argues that, because Montana law provides more protections from search and seizure than federal law, his search, seizure and subsequent arrest is constitutional only if it complied with applicable Montana law. The Supreme Court's recent decision in *Virginia v. Moore*, ___ U.S. ___, 128 S. Ct. 1598 (2008), however, precludes this argument.

**[2]** In *Moore*, the Supreme Court held that "warrantless arrests for crimes committed in the presence of an arresting officer are reasonable under the Constitution, and that while States are free to regulate such arrests however they desire, state restrictions do not alter the Fourth Amendment's protections." *Moore*, 128 S. Ct. at 1607. The Supreme Court has long analyzed "search and seizure" using the traditional standards of reasonableness. *See Atwater v. City of Lago Vista*, 532 U.S. 318, 345-47 (2001)*; Devenpeck v. Alford*, 543 U.S. 146, 152-53 (2004)*; Gerstein v. Pugh*, 420 U.S. 103, 111-13 (1975)*; Brinegar v. United States*, 338 U.S. 160, 164 (1949). The law of a particular state has never changed that reasonableness standard. *See California v. Greenwood*, 486 U.S. 35, 43-45 (1988). In *Greenwood*, the Supreme Court held:

Individual States may surely construe their own constitutions as imposing more stringent constraints on police conduct than does the Federal Constitution. We have never intimated, however, that whether or not a search is reasonable within the meaning of the Fourth Amendment depends on the law of the particular State in which the search occurs.

*Id.* at 43.

Despite this precedent, Brobst argues that, because the Supreme Court failed to discuss or overrule *Ker* in its *Moore* decision, we should follow language in *Ker* in making this decision. Again, we do not agree.

First, in *Moore*, the Supreme Court sought to clarify the application of state law to Fourth Amendment violations. The Court began by examining the history of the Fourth Amendment, and found that it was "aware of no historical indication that those who ratified the Fourth Amendment understood it as a redundant guarantee of whatever limits on search and seizure legislatures might have enacted." *Moore*, 128 S. Ct. at 1602. The Supreme Court further opined that, "[o]ur decisions counsel against changing this calculus when a State chooses to protect privacy beyond the level that the Fourth Amendment requires. We have treated additional protections exclusively as matters of state law." *Id.* at 1604.

When examining its prior jurisprudence in *Moore*, the Supreme Court did not mention *Ker*. The Court, however, specifically mentioned and distinguished *United States v. Di Re*, 332 U.S. 581 (1948) and *Johnson v. United States*, 333 U.S. 10 (1948), cases on which the *Ker* opinion relies. It said:

We need not pick and choose among the dicta: Neither *Di Re* nor the cases following it held that violations of state arrest law are also violations of the Fourth Amendment, and our more recent decisions,

discussed above, have indicated that when States go above the Fourth Amendment minimum, the Constitution's protections concerning search and seizure remain the same.

*Moore*, 128 S. Ct. at 1605. Thus, a "warrantless arrest satisfies the Constitution so long as the officer has probable cause to believe that the suspect has committed or is committing a crime." *Id*. (citation and internal quotation marks omitted).

Second, *Ker* did not deal with an arrest for a federal crime as does this case. Instead, the *Ker* plurality opinion dealt with the lawfulness of an arrest by state officers for state offenses. The Court there determined that an arrest (allowed under California law for a California crime) was not unreasonable under the standards of the Fourth Amendment as applied to the States through the Fourth Amendment. *See Ker*, 374 U.S. at 41. Therefore, any reference in *Ker,* applying state law to determine the lawfulness of this arrest for federal crimes, is not applicable here.

*Ker* was also decided by a plurality of the Supreme Court. Therefore, "[a]s the plurality opinion . . . did not represent the views of a majority of the Court, we are not bound by its reasoning." *CTS Corp. v. Dynamics Corp. of America*, 481 U.S. 69, 81 (1987); *see also Altria Group, Inc. v. Good*, ___ U.S. ___, 129 S. Ct. 538, 554-55 (2008) (Thomas, J., dissenting) ("The majority does not assert that the *Cipollone* plurality opinion is binding precedent, and rightly so. Because the 'plurality opinion . . . did not represent the views of a majority of the Court, we are not bound by its reasoning.' . . . At most, *Cipollone* is a 'point of reference for further discussion.' . . . But even if the plurality opinion had some force beyond its mere persuasive value, it nevertheless should be abandoned." (internal citations omitted)).

**[3]** Lastly, Brobst argues that *Moore* applies only to state not federal prosecutions and, therefore, we should apply the

language in *Ker*. However, Brobst's reasoning is faulty. *Ker* was also a decision regarding a state prosecution rather than a federal prosecution. Therefore, based on the logic of Brobst's argument, *Moore* would specifically overrule *Ker*. We instead find that *Moore* distinguished the precedent, on which the *Ker* decision relies. *Moore*, therefore, distinguishes *Ker*. Further, Brobst's argument contradicts the holding in *Moore*. The Court noted "linking Fourth Amendment protections to state law would cause them to vary from place to place and from time to time . . . . Even at the same place and time, the Fourth Amendment's protections might vary if federal officers were not subject to the same statutory constraints as state officers. . . . It would be strange to construe a constitutional provision that did not apply to the States at all when it was adopted to now restrict state officers more than federal officers, solely because the States have passed search-and-seizure laws that are the prerogative of independent sovereigns." *Moore*, 128 S. Ct. at 1607 (internal citation and quotation marks omitted).

## III.   Motion to Suppress Search Warrant

### A.   Brobst's Residence

Brobst argues that the search warrant violated his rights under the Fourth Amendment, because it failed to (1) describe the appearance of the structure and (2) identify the "new address." Specifically, Brobst argues that the description of the residence, as a "single story, single family, ranch style dwelling with shingle roof," described several residences on Driftwood Lane, including two on his own property. Thus, the warrant lacked particularity. We review de novo the district court's denial of Brobst's motion to suppress, and the factual findings underlying the denial for clear error. *See United States v. Peterson*, 353 F.3d 1045, 1048 (9th Cir. 2003). We also review de novo a district court's determination regarding the specificity of a warrant, including whether it is overbroad

or not sufficiently particular. *See United States v. Wong*, 334 F.3d 831, 836-37 (9th Cir. 2003).

**[4]** The Fourth Amendment states that "no Warrants shall issue, but upon probable cause, . . . and particularly describing the place to be searched. . . ." U.S. Const. amend. IV. As to a warrant's description of the place to be searched, the United States Supreme Court held, "It is enough if the description is such that the officer with a search warrant can, with reasonable effort ascertain and identify the place intended." *Steele v. United States*, 267 U.S. 498, 503 (1925). We have held that "[t]he test for determining the validity of a warrant is [(1)] whether the warrant describes the place to be searched with 'sufficient particularity to enable law enforcement officers to locate and identify the premises with reasonable effort,' and [(2)] whether any reasonable probability exists that the officers may mistakenly search another premise." *United States v. Mann*, 389 F.3d 869, 876 (9th Cir. 2004) (citation omitted). In evaluating the effect of a misstated address on the sufficiency of a warrant, we have also recognized that "[t]he necessary specificity of the description will differ as between urban and rural areas and depends heavily upon the factual circumstances of each case." *Id.* (citation and internal quotation marks omitted). Additionally, we have also taken into account the knowledge of the officer executing the warrant. *See id.* at 876-77 (holding the warrant was sufficiently particular, regardless of the misstated address, because (1) two of the agents executing the warrant personally knew which premises were intended to be searched; (2) the misaddress of "Lower Deer Creek" rather than "Upper Deer Creek" could not have caused any confusion because the road referenced in the warrant only traveled to Upper Deer Creek; (3) the address was reasonable for the rural location; and (4) the premises that were intended to be searched were those actually searched); *United States v. Turner*, 770 F.2d 1508, 1511 (9th Cir. 1985) (holding the warrant was sufficiently particular in that: (1) it described the house to be searched with great particularity and no nearby houses met the warrant's detailed

description; (2) the address was reasonable for the location intended; (3) the house had been under surveillance; (4) the warrant was executed by an officer who knew which premises were intended to be searched; and (5) the premises that were intended to be searched were those actually searched).

**[5]** Applying this law to these circumstances, we hold that, notwithstanding (1) the address change from 31 Driftwood Lane, Woods Bay, Montana to 32877 Driftwood Lane, Bigfork, Montana and (2) the proximity of similarly described homes, law enforcement officers were able to locate and identify Brobst's residence (the premises to be searched) with reasonable effort. The officers drove directly to the property based upon the information in the warrant. The misstated address and similar ranch style homes did not cause any confusion to the officers. Both the mailbox and the sign on the tree in front of the searched residence bore his name, indicating Brobst's ownership of that residence. The address was reasonable for the rural location of the property, the address change only occurring to accommodate the 9-1-1 system. The officers actually searched the residence which was intended to be searched. Furthermore, in an abundance of caution, the officers verified it was Brobst's property based upon a tax/ property map, which Detective Yonkin obtained. The officers contacted "neighbors," who stated the house was Brobst's. The officers attempted (without success) to cross-reference the address through dispatch. All of these facts support a finding that these officers located and identified Brobst's residence with reasonable effort. There is no evidence in the record that indicated that the officers were unsure of their location. There was virtually no chance that the officers had any trouble locating and identifying Brobst's residence or that they would have searched another house by mistake. In applying the two-part test, we conclude that the warrant was sufficiently particular for officers to locate the premises with reasonable effort. No reasonable probability existed, under these circumstances, that the officers would have mistakenly

searched the wrong premises. Thus, the district court did not err in denying Brobst's motion to suppress.

The district court alternatively held that, even if the search warrant was not sufficiently particularized, the good faith exception applied to the search of Brobst's residence. *See Massachusetts v. Sheppard*, 468 U.S. 981, 987-88 (1984); *United States v. Clark*, 31 F.3d 831, 835 (9th Cir. 1994). Brobst did not challenge this alternative finding. Because we conclude that the warrant was valid, we need not address this alternative finding.

## B.   Computer-Related Items

Brobst argues that the seizure of computer-related items, compact disks, floppy disks, hard drives, memory cards, DVDs, videotapes, and other portable digital devices lacked probable cause. We review the district court's denial of a motion to suppress evidence de novo. *United States v. Meek*, 366 F.3d 705, 711 (9th Cir. 2004). We also review a magistrate's finding of probable cause to issue a search warrant for clear error, and we give "great deference" to such a finding. *United States v. Hay*, 231 F.3d 630, 634 n.4 (9th Cir. 2000).

The Fourth Amendment requires that a warrant describe with particularity the "things to be seized." U.S. Const. amend. IV. Search warrants must be specific in both particularity and breadth. *See United States v. Towne*, 997 F.2d 537, 544 (9th Cir. 1993). "Particularity is the requirement that the warrant must clearly state what is sought. Breadth deals with the requirement that the scope of the warrant be limited by the probable cause on which the warrant is based." *Id.* (citation and internal quotation marks omitted). We have held that probable cause must exist to seize all the items of a particular type described in the warrant. *United States v. Spilotro*, 800 F.2d 959, 963 (9th Cir. 1986).

The description of the things to be seized must be specific enough to enable the officers conducting the search reason-

ably to identify the things authorized to be seized. *See Mann*, 389 F.3d at 877. This prevents "general, exploratory rummaging in a person's belongings." *United States v. Rude*, 88 F.3d 1538, 1551 (9th Cir. 1996) (internal quotation marks and citation omitted). However, the search warrant "need only be reasonably specific, rather than elaborately detailed." *Id.* (internal quotation marks and citation omitted). "The specificity required varies depending on the circumstances of the case and the type of items involved." *Id.* (internal quotation marks and citation omitted). This particularity "also ensures that the magistrate issuing the warrant is fully apprised of the scope of the search and can thus accurately determine whether the entire search is supported by probable cause." *Mann*, 389 F.3d at 877.

**[6]** Brobst argues probable cause did not exist, because a single photograph, which one witness believed was from the internet, is not sufficient evidence to seize computer-related items. Brobst argues that the affidavit provided probable cause only for the seizure of the photographs that were printed off the internet, the tower computer, and the HP color printer. We disagree. As a practical matter, the seizure of the computer-related equipment was described in the narrowest terms reasonably likely to contain the images. *See United States v. Giberson*, 527 F.3d 882, 886-87 (9th Cir. 2008) (holding that a warrant describing particular documents authorizes the seizure of a computer, where the searching agents reasonably believe that documents specified in the warrant would be found stored in the computer); *United States v. Lacy*, 119 F.3d 742, 746 (9th Cir. 1997) (holding "when a more precise description is not possible" a blanket seizure is allowed); *United States v. Hay*, 231 F.3d 630, 637 (9th Cir. 2000) (holding a "generic classification" authorizing the seizure of an "entire computer system and virtually every document in [the defendant's] possession without referencing child pornography or any other particular offense conduct" was permissible).

**[7]** At the time Detective Yonkin applied for the warrant, he could not have known what storage media Brobst used. *See Lacy*, 119 F.3d at 746. Here, as with *Lacy*, we conclude that the seizure of the computer-related equipment was reasonable. The magistrate did not commit clear error in finding probable cause, as evidence of child pornography obtained from the internet existed. We therefore affirm the district court.

## IV. Motion to Dismiss the Indictment/Motion to Reconsider

Brobst argues that the district court erred in not dismissing the indictment or reconsidering the motion to suppress the search warrant for lack of particularity, because the prosecutor failed (prior to the suppression hearing) to provide Brobst information that would have produced a different outcome had it been disclosed. "The decision to reconsider a suppression order at trial is reviewed for abuse of discretion." *United States v. Buffington*, 815 F.2d 1292, 1298 (9th Cir. 1987). "Dismissal of an indictment on due process grounds is reviewed de novo; dismissal based on the court's supervisory powers is reviewed for abuse of discretion." *United States v. Barrera-Moreno*, 951 F.2d 1089, 1091 (9th Cir. 1991). We review possible violations of a defendant's due process rights under *Brady v. Maryland*, 373 U.S. 83 (1963), de novo. *United States v. Lehman*, 792 F.2d 899, 901 (9th Cir. 1986).

**[8]** In *Brady*, the Supreme Court held that withholding evidence that is material to the defendant's guilt violates due process. *Brady*, 373 U.S. at 87. Evidence is material under the *Brady* rule only if "there is a reasonable probability that, had [it] been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). Here, the prosecutor failed to turn over an email message received from Detective Yonkin, discussing Yonkin's opinion of Brobst's numerous pretrial motions. The message, however, included additional information about the officers' actions at Brobst's residence. Specifically, Detective

Yonkin called dispatch to cross-check the present 9-1-1 address with the former address, and he ran the license on a vehicle parked nearby. Brobst argues that these facts demonstrate that Detective Yonkin's uncertainty as to what premise was to be searched. The district court did not agree. We affirm its decision.

[9] The fact that Detective Yonkin attempted to cross-reference Brobst's address is relevant only to the issue of the sufficiency of the search warrant, discussed above. As we concluded, the officers were able to drive to the premises based on the address in the search warrant and confirm it with little effort. Additionally the "neighbors" verified that Brobst owned the property. Detective Yonkin believed that they were at the correct residence, and his additional attempts to verify the location does not indicate that Detective Yonkin was unsure of the residence or unable to reasonably locate the premises to be searched. The district court found that Detective Yonkin's reasonable efforts satisfied the test of whether the officer with a search warrant could, with reasonable effort, ascertain and identify the place to be searched. There is no reasonable probability that the undisclosed evidence would have changed the district court's determination as to the warrant's particularity. Thus, the undisclosed evidence was not material. *See Bagley*, 473 U.S. at 682.

## V.   Motion to Suppress Statements — Pre-Arrest

Brobst claims that he was "in custody" when he made his initial statements to the officers at his home, and that the district court therefore erred in denying his motion to suppress. We review de novo the district court's decision to admit or suppress statements that may have been obtained in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966). *See United States v. Rodriguez-Rodriguez*, 393 F.3d 849, 855 (9th Cir. 2005). Whether a person is in custody for purposes of *Miranda* is reviewed de novo. *See United States v. Hayden*, 260 F.3d 1062, 1066 (9th Cir. 2001). The factual findings

underlying the district court's decision, however, are reviewed for clear error. *See United States v. Andaverde*, 64 F.3d 1305, 1313 (9th Cir. 1995).

**[10]** "[I]n-custody determinations must be based on the totality of the circumstances and are reviewed according to whether a reasonable person in such circumstances would conclude after brief questioning that he or she would not be free to leave." *Hayden*, 260 F.3d at 1066 (alteration and internal quotation marks omitted). "Factors relevant to whether an accused is 'in custody' include the following: (1) the language used to summon the individual; (2) the extent to which the defendant is confronted with evidence of guilt; (3) the physical surroundings of the interrogation; (4) the duration of the detention; and (5) the degree of pressure applied to detain the individual." *Id.*

**[11]** The nature of the language used to summon Brobst weighs in favor of a conclusion that Brobst was in custody. Uniformed and armed Deputy Ewers approached Brobst when Brobst first came to his own home. Deputy Ewers then stated, "you need to come with me" or words to that effect. This statement is a command or a show of force.

**[12]** When Brobst entered the kitchen, Detective Yonkin provided Brobst with a copy of the search warrant. Detective Yonkin then told Brobst that they had located child pornography in the house. Detective Yonkin questioned Brobst about the pornography. Because (1) Brobst was immediately confronted with evidence of the child pornography against him and (2) the manner in which he was confronted, these facts weigh in favor of finding Brobst was in custody.

**[13]** The physical surroundings of the interrogation weigh in favor of finding Brobst was in custody. We have held that detention in one's residence (not isolated, unfamiliar surroundings) may militate against a determination of custody. *See generally United States v. Gregory*, 891 F.2d 732, 735

(9th Cir. 1989); *United States v. Eide*, 875 F.2d 1429, 1437 (9th Cir. 1989) (all indicating that interrogations occurring at a defendant's residence are a factor in finding a defendant is not in custody). All of these cases, however, are distinguishable, because the officers were not in the residence when the defendant arrived. Other circuits rely upon the degree to which law enforcement officers dominated the scene. *See United States v. Ritchie*, 35 F.3d 1477, 1485 (10th Cir. 1994) ("[C]ourts are *much less likely* to find the circumstances custodial when the interrogation occurs in familiar or at least neutral surroundings, such as the suspect's home.") (internal quotation marks and citation omitted); *United States v. Mittel-Carey*, 493 F.3d 36, 40 (1st Cir. 2007) ( "While an interrogation in a defendant's residence, without more, certainly weighs against a finding of custody, . . . the level of physical control the agents exercised . . . weighs heavily in the opposite direction . . . ."); *Sprosty v. Buchler*, 79 F.3d 635, 641 (7th Cir. 1996) ( "More important than the familiarity of the surroundings where [the defendant] was being held is the degree to which the police dominated the scene."); *United States v. Griffin*, 922 F.2d 1343, 1354-55 (8th Cir. 1990) ("Questioning which occurs in the suspect's own home may provide a margin of comfort, but . . . the setting of the interrogation is not so important to the inquiry as the question of police domination of that setting."); *but see Orozco v. Texas*, 394 U.S. 324, 326-27 (1969) (holding that a suspect within his own residence was in custody for Miranda purposes). Here, the officers entered Brobst's residence, in Brobst's absence, through an open window. When Brobst arrived at his residence, three officers were already there. Two of the officers were searching the inside of the residence, and Deputy Ewers was outside the residence, waiting, in part, for Brobst's return. Immediately upon Brobst's arrival, Deputy Ewers approached Brobst and told Brobst to follow him.

The short duration of the interrogation weighs against finding Brobst was in custody. *See Gregory*, 891 F.2d at 735 (finding defendant was not in custody, in part, because the

entire interview lasted only a few minutes). The district court found that Brobst was questioned for "two minutes or so." Only ten to fifteen minutes elapsed from the time Brobst arrived at his home to the time when he was placed under arrest.

Lastly, the degree of pressure applied to detain Brobst weighs against finding that Brobst was in custody. Brobst was neither handcuffed nor told that he was under arrest. Brobst argues that "the three armed officers positioned themselves as to prevent Brobst from leaving." The district court found that the officers did not position themselves to prevent Brobst from leaving, but rather found that two officers were a normal conversational distance from Brobst, and Deputy Ewers was some feet away during the interrogation. There is no clear error in the district court's factual findings. Even if the officers did position themselves to prevent Brobst from leaving, it was reasonable under these circumstances to take steps to insure their safety. *See United States v. Booth*, 669 F.2d 1231, 1236 (9th Cir. 1981) ("Strong but reasonable measures to insure the safety of the officers or the public can be taken without necessarily compelling a finding that the suspect was in custody."); *United States v. Kim*, 292 F.3d 969, 976-77 (9th Cir. 2002) (noting locking doors and restricting the occupants' movement are often reasonable police procedures to control access to a scene during the execution of a search warrant).

[14] Based upon the totality of the circumstances, and after applying the five relevant factors, we find that a reasonable person in such circumstances would conclude that he would not be free to leave. Thus, we hold that the district court erred in holding that Brobst was not in custody.

[15] Even though the district court erred in denying the motion to suppress, we will sustain the denial if the error was harmless. *See United States v. Khan*, 993 F.2d 1368, 1376 (9th Cir. 1993) (holding that admission of evidence obtained

in violation of *Miranda* is subject to a harmless error analysis). Although Brobst's statement made at his residence should have been suppressed, the child pornographic materials produced as a result of the search and Brobst's separate post-*Miranda* statements admitting to possession of the materials were not "tainted" and were properly admitted by the district court. *See Oregon v. Elstad*, 470 U.S. 298, 309 (1985). Because Brobst's convictions were based upon more than his "in custody" statement, we hold that it was harmless error for the district court to admit Brobst's statement made in violation of his *Miranda* rights.

## VI. Motion to Suppress — Warrantless Arrest

Brobst argues that the warrantless arrest was illegal on two theories: (1) the search warrant did not cure the need for an arrest warrant and (2) there was no probable cause and exigent circumstances to arrest based upon Montana law. We review whether officers had probable cause for a warrantless arrest de novo. *United States v. Juvenile (RRA-A)*, 229 F.3d 737, 742 (9th Cir. 2000).

In general, police officers may not enter a person's home to arrest him without obtaining an arrest warrant. *See Payton v. New York*, 445 U.S. 573, 589-90 (1980). The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. "[T]he Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not be crossed without a war-

rant." *Payton*, 445 U.S. at 590. The warrant requirement, however, has exceptions. In order for an officer to effect a warrantless arrest, the officer needs probable cause as defined by federal Fourth Amendment jurisprudence to make a warrantless arrest. *See United States v. Bueno-Vargas*, 383 F.3d 1104, 1107 (9th Cir. 2004); *Moore*, 128 S. Ct. at 1607. Probable cause requires more than bare suspicion but need not be based on evidence sufficient to support a conviction, nor even a showing that the officer's belief is more likely true than false. *Brinegar v. United States*, 338 U.S. 160, 175 (1949). In *United States v. Moreno*, 891 F.2d 247 (9th Cir. 1989), we held that once incriminating evidence is discovered by officers serving a valid search warrant, that evidence can provide probable cause for a warrantless arrest. *See id.* at 249 (officers were justified in making an investigatory stop when defendant approached own house, then drove away, while officers were executing search warrant).

**[16]** Here, a valid search warrant existed allowing the officer to enter Brobst's home. While the warrant did not authorize Brobst's arrest, incriminating evidence was found by the officers prior to Brobst's arrest. That incriminating evidence provided Detective Yonkin the necessary probable cause to arrest him.

Because we hold that Montana law does not apply to the lawfulness of Brobst's arrest, *see* Section II, we need not address Brobst's arguments regarding the application of Montana law.

## VII.   Motion to Suppress Statements — Post-Arrest

Because the officers failed to provide Brobst with *Miranda* warnings while he was in custody at his residence, we must next determine whether the statements Brobst made at the police station, after receiving his *Miranda* warnings and signing the *Miranda* waiver, were admissible. *See United States v. Orso*, 234 F.3d 436, 440-41 (9th Cir. 2000). An initial fail-

ure of law enforcement officers to administer *Miranda* warnings, "unaccompanied by any actual coercion or other circumstances calculated to undermine the suspect's ability to exercise his free will," does not, without more, taint subsequent *Mirandized* statements. *See Elstad*, 470 U.S. at 309; *see also Colorado v. Connelly*, 479 U.S. 157, 167, 169-70 (1986) (holding that "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' "). "A subsequent administration of *Miranda* warnings to a suspect who has given a voluntary but unwarned statement ordinarily should suffice to remove the conditions that precluded admission of the earlier statement." *Elstad*. 470 U.S. at 314.

**[17]** Here, Brobst's initial statements were not coerced. The officers' initial questions — whether the pornographic material was Brobst's, whether someone else lived in the residence, and whether the papers might belong to someone else — though improper, were not deliberately coercive or improper tactics. *See United States v. Toral*, 536 F.2d 893, 896-87 (9th Cir. 1976) (finding that because "[a]ll of the questioning took place in the security of appellant's own home . . . and the initial questioning, though improper, was in the form of preliminary questions that may have been asked of anyone in order to narrow the field of suspects[,] . . . no coercive atmosphere . . . was carried over after the Miranda warnings were given"). Brobst was not subject to coercive or improper tactics, such as being "confronted with the description of unpleasantness of prison for the obvious purpose of getting (appellant) to abandon (his) self-imposed silence . . . in flagrant violation of . . . Miranda." *United States v. Olof*, 527 F.2d 752, 753-54 (9th Cir. 1975) (internal quotation marks omitted). Brobst stated no one else lived in the residence and that the house was his, so the materials must also be his. There is no evidence in the record that Brobst's "in custody" statements were the result of any coercion. Thus, we conclude the statements made after Brobst was advised of his rights under *Miranda*, which he voluntary waived, were appropriately admitted and the district court did not err.

## VIII.   Improper Burden Shifting

Brobst argues that the district court improperly shifted the burden of proof to him during the bench trial on three topics: (1) there were actually two houses and a garage on the lot rather than one house; (2) the filing cabinet containing the printed child pornography images was locked; and (3) it was possible that images of child pornography on Brobst's computer were either not viewed or were there without his knowledge. Brobst argues that the foregoing contain reasonable inferences that would give rise to reasonable doubt. "Whether the [court] improperly shifted the burden of proof to the defendant is reviewed de novo." *United States v. Coutchavlis*, 260 F.3d 1149, 1156 (9th Cir. 2001). We review for clear error the district court's factual findings in connection with a bench trial. *Saltarelli v. Bob Baker Group Med. Trust*, 35 F.3d 382, 384 (9th Cir. 1994).

In *In re Winship*, 397 U.S. 358 (1970), the Supreme Court held that the "Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." 397 U.S. at 364. Here, Brobst was charged with receipt and possession of child pornography materials. The government therefore had the burden to prove beyond a reasonable doubt that the defendant knowingly received and/or knowingly possessed materials that contained images of child pornography that were transported in interstate or foreign commerce or were produced using material that had been transported in interstate or foreign commerce by computer or other means. *See* 18 U.S.C. §§ 2252A(a)(2); 2252A(a)(5)(B).

Brobst's first two assertions — the existence of multiple dwellings on the property and the locked filing cabinet — are not relevant or material to the elements of receipt or possession of child pornography. These assertions are relevant, if at all, to Brobst's suppression motions related to the sufficiency of the search warrant and the scope of the search warrant. We

found the warrant was sufficiently particular to locate Brobst's residence, and Brobst did not assert that the opening of a locked filing cabinet was beyond the warrant's scope.

Brobst's remaining assertion — whether images of child pornography on Brobst's computer were either not viewed or were there without his knowledge — relates to the elements the government must prove. The district court took testimony on this issue from Jimmy Weg, the government's witness, about the images found on Brobst's computer. Brobst's counsel was able to competently cross examine Weg, which included questions of whether Brobst would have necessarily known that child pornographic images were stored in his computer's cache. Based upon Weg's testimony, Brobst moved for a judgment of acquittal. The district court denied the motion, finding that, based upon Weg's testimony and Brobst's *Mirandized* statements, Brobst knew the photographs were stored on his computer.

The statements upon which Brobst relies to show that the district court shifted the burden of proof were made by the district court during Brobst's closing remarks. The district court stated in part:

> **THE COURT:** Well, but is there any question that he's the one that had access to the computer and he's the one that was using? I mean, that doesn't even seem to be in dispute to me. There's no proof.
>
> I mean, his now wife said that she transferred everything that was on the old computer to the new computer. But that doesn't mean getting on the internet, that means taking the entirety of what was on the old computer and putting it on the new computer with a new operating system.
>
> **MR. LEANDER:** That's correct. And we don't know whether these images may have existed from a prior hard drive from the Radioactive folks.

**THE COURT:** I know, but there isn't any evidence to support that.

**MR. LEANDER:** Well, I think there's a suggestion, and I think the government -

**THE COURT:** But evidence is what you need. Not suggestion, evidence. Because I can sit here and speculate a million things, somebody coming into his house at night when he was sleeping and he didn't know they were there and they got on his computer and they used his credit card. You can speculate about a lot of things, but that doesn't mean it's evidence. You have to have evidence.

What evidence is there to support that position? That it came from . . . Radioactive computer. That they used an old one that somebody else had used for child pornography.

**MR. LEANDER:** Your Honor, it's my position that it's the government's burden to prove otherwise. There are suggestions — we know that there was a Jerry, Jr., there. We know the testimony from their own expert has stated that this can take place. And I think the government — the defense can make suggestions that raise doubt.

**THE COURT:** They don't, in my mind. The suggestions you're making don't raise doubt in my mind. They don't. They sound like just rank speculation.

[18] The district court, in its oral decision, found that the government had proved the elements of the charges of possession and receipt beyond a reasonable doubt. It is clear that the district court knew the standard and applied it. The district court's comments during Brobst's closing arguments were

nothing more than the district court (in its capacity as trier of fact) reflecting to counsel that it did not believe that Brobst was unaware of the materials or that someone else had placed the materials on his computer. Under these circumstances, we conclude the district court did not shift the burden of proof and its findings were not clearly erroneous. *See United States v. Atkinson*, 990 F.2d 501, 503 (9th Cir. 1993) (en banc) ("In a bench trial, the judge acting as the trier of both fact and law implicitly rules on the sufficiency of the evidence by rendering a verdict of guilty.").

## IX. Double Jeopardy

**[19]** In light of this court's decisions in *United States v. Davenport*, 519 F.3d 940 (9th Cir. 2008) and *United States v. Giberson*, 527 F.3d 882 (9th Cir. 2008), Brobst's convictions for both receipt and possession of child pornography violated the Double Jeopardy Clause of the Fifth Amendment to the Constitution. *See Davenport*, 519 F.3d at 947. "Where we conclude that a defendant has suffered a double jeopardy violation because he was erroneously convicted for the same offense under two separate counts . . . 'the only remedy consistent with the congressional intent is for the [d]istrict [c]ourt, where the sentencing responsibility resides, to exercise its discretion to vacate one of the underlying convictions.' " *United States v. Schales*, 546 F.3d 965, 980 (9th Cir. 2008) (quoting *United States v. Ball*, 470 U.S. 856, 864 (1985)). Accordingly, we vacate the judgment and remand with instructions that the district court vacate one of Brobst's convictions for either receipt or possession of child pornography, allowing for it to be reinstated without prejudice if his other conviction should be overturned on direct or collateral review.

## X. Conclusion

We affirm the district court's denial of (1) Brobst's motions to suppress and (2) Brobst's motion to dismiss the indictment

or reconsider the motion to suppress re: sufficiency of search warrant. We also find the district court did not shift the burden of proof to Brobst during the bench trial. Lastly, we find that Brobst's convictions for receipt and possession of child pornography were in violation of the Double Jeopardy Clause and vacate Brobst's sentence and remand to the district court.

**CONVICTION AFFIRMED; SENTENCE VACATED and REMANDED.**