FILED

JAN 26 2012

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 10-10337 |
| Plaintiff - Appellant, | D.C. No. 2:08-cr-00269-WBS-KJM-1 |
| v. | |
| JOEL BLANFORD, | MEMORANDUM* |
| Defendant - Appellee. | |

Appeal from the United States District Court
for the Eastern District of California
William B. Shubb, Senior District Judge, Presiding

Argued and Submitted January 13, 2012
San Francisco, California

Before: WALLACE, NOONAN, and M. SMITH, Circuit Judges.

Plaintiff-Appellant United States of America appeals the district court's

grant of Defendant-Appellee Joel Blanford's motion to suppress statements he

made during an in-home interview with federal agents. Because the parties are

familiar with the factual and procedural history of this case, we repeat only those

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

facts necessary to resolve the issues raised on appeal. We have jurisdiction pursuant to 18 U.S.C. § 3731. Reviewing de novo the district court's decision to suppress statements under *Miranda v. Arizona*, 384 U.S. 436 (1966), and reviewing for clear error the district court's underlying factual findings, we affirm. *See United States v. Brobst*, 558 F.3d 982, 995 (9th Cir. 2009).

Blanford was in custody for *Miranda* purposes during his in-home interview because a reasonable person "would 'have felt he or she was not at liberty to terminate the interrogation and leave.'" *United States v. Craighead*, 539 F.3d 1073, 1082 (9th Cir. 2008) (quoting *Thompson v. Keohane*, 516 U.S. 99, 112 (1995)). Although Blanford invited the agents into his home, we hold that, in light of the totality of the circumstances, the interview was custodial. Blanford was isolated during the interview, which lasted forty-five minutes. The agents were armed with guns, advised him not to have a lawyer present, and confronted him with substantial evidence of his guilt for fraud and not telling the truth, to stop him from terminating the interview or leaving. Moreover, the agents outnumbered Blanford and restrained Blanford by threatening him with criminal charges if he did not cooperate and answer their questions after showing him evidence strongly suggesting his guilt. Blanford answered the agents' questions when he was alone, and the agents never informed him that he was free to leave or terminate the

2

interview. Under these circumstances, the balance of the relevant factors suggests that Blanford was in custody. *See Brobst*, 558 F.3d at 995; *Craighead*, 539 F.3d at 1084. The circumstances of his interview created a police-dominated atmosphere. *See Craighead*, 539 F.3d at 1084.

Because Blanford was in custody during his in-home interview, and the agents did not give him *Miranda* warnings before questioning him, the agents violated *Miranda*. *See Stansbury v. California*, 511 U.S. 318, 322 (1994) (per curiam). Thus, we affirm the district court's suppression of Blanford's statements. *See id.*

**AFFIRMED.**

*United States v. Blanford*, No. 10-10337

WALLACE, Senior Circuit Judge, dissenting:

The question of whether a reasonable person would have felt that he was not at liberty to terminate an interrogation and leave is aimed at resolving "the ultimate inquiry": "was there a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *Thompson v. Keohane*, 516 U.S. 99, 112 (1995) (internal punctuation omitted) (quoting *California v. Beheler*, 463 U.S. 1121, 1125 (1983) (*per curiam*)). Blanford's freedom was never restrained to such a degree. While the majority lists a version of the facts corresponding to the factors examined in *United States v. Craighead*, 539 F.3d 1073 (9th Cir. 2008), its conclusion abandons *Craighead*'s reasons for considering those factors. Therefore, I dissent.

The majority apparently considers the fact that there were two plainclothes agents with concealed weapons as supporting its finding of custody. I disagree. In *Craighead*, the court was concerned that a "large number" of law enforcement agents might fill the home so there would be nowhere to retreat, might suggest that an agent would stop the suspect on his way out, or might suggest that the agents were brought to prevent the suspect's departure. 539 F.3d at 1084-85. The court was also concerned that unholstered weapons show that the suspect's home is no

1

longer safe from the threat of police force. *Id*. at 1085. None of the concerns that animated *Craighead*'s inquiry into the number of armed agents are present here because there were only two agents and they were not displaying their weapons.

The majority also apparently relies on the fact that no one other than Blanford and the agents were in Blanford's dining room when he answered the agents' questions. However, *Craighead*'s inquiry into "whether the suspect was isolated from others" stems from *Miranda v. Arizona*, 384 U.S. 436, 445 (1966), which was concerned about "incommunicado interrogation," and *United States v. Griffin*, 922 F.2d 1343, 1352 (8th Cir. 1990), which was concerned about "police domination" by the "removal of the suspect from the presence of family, friends, or colleagues who might lend moral support during the questioning." 539 F.3d at 1086-87. Here, the interview was not incommunicado and the agents did not remove anyone from Blanford's presence. When Blanford's wife and children arrived at home in the middle of the interview, Blanford left the table to meet them and it was Blanford who asked his family to go to another room.

The majority's view that the agents restrained Blanford by threatening him with criminal charges is also at odds with *Craighead*, which looks into whether "agents restrain[ed] the ability of the suspect to move." 539 F.3d at 1085. The threats of future criminal charges did not affect Blanford's ability to move, but

2

instead related to the potential legal consequences he might suffer someday if he did not cooperate. Blanford was never restrained from leaving the dining room table, continuing the interview to another date, or terminating the interview entirely.

That Blanford's questioning may have taken place in a "coercive environment" is not by itself sufficient to render the questioning custodial. *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977). "Any interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime." *Id.* The two agents, who were invited inside Blanford's home and who allowed Blanford to control the location of the interview and the people present, did not turn Blanford's home into a police-dominated atmosphere. *See Craighead*, 539 F.3d at 1083. Therefore, Blanford was not in custody when he made the statements sought to be suppressed.

I dissent.