
**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 14-10127 |
| Plaintiff - Appellee, | D.C. No. 2:13-CR-00038-APG-PAL-1 |
| v. | |
| ANDREI RAILEANU, | MEMORANDUM[*] |
| Defendant - Appellant. | |

**Appeal from the United States District Court
for the District of Nevada**
Andrew P. Gordon, District Judge, Presiding

Argued and Submitted March 10, 2015
San Francisco, California

Before: W. FLETCHER, DAVIS[**], and CHRISTEN, Circuit Judges.

Defendant Andrei Raileanu appeals the district court's denial of his motion

to suppress evidence and statements.  For the reasons stated below, we affirm.

---

[*]     This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

[**]     The Honorable Andre M. Davis, Senior Circuit Judge for the U.S.
Court of Appeals for the Fourth Circuit, sitting by designation.

**1.** We review de novo the district court's denial of a motion to suppress. *United States v. Brobst*, 558 F.3d 982, 991 (9th Cir. 2009). The factual findings underlying the denial of the motion to suppress are reviewed for clear error. *Id.*

We also review de novo the adequacy of a *Miranda* warning, *United States v. Williams*, 435 F.3d 1148, 1151 (9th Cir. 2006), and whether reasonable suspicion justified a traffic stop, *United States v. Palos-Marquez*, 591 F.3d 1272, 1274 (9th Cir. 2010).

**2.** Although Appellant's contrary arguments are not without force, Officer Jordan Bundy had reasonable suspicion to stop Raileanu's car. *See United States v. Valdes-Vega*, 738 F.3d 1074, 1078 (9th Cir. 2013) (en banc) (explaining that reasonable suspicion "is not a particularly high threshold to reach"). Raileanu's counter-surveillance behavior at the gas station (standing at the corner of the gas station and "peering" around a building, seemingly looking for the patrol vehicle), combined with his touching the fog line, the white line that demarcates the road shoulder from the travel lane, three times within about a quarter of a mile, gave rise to reasonable suspicion of a DUI. *See United States v. Del Vizo*, 918 F.2d 821, 826 (9th Cir. 1990) (driving or acting in an evasive or counter-surveillance fashion can be an indicant of criminal activity).

2

**3.** Moreover, the scope and duration of the traffic stop fell well within constitutional limits. Upon initiating the traffic stop, Officer Bundy asked Raileanu a reasonable number of questions about his behavior at the gas station and where he was headed and for what purpose. *See Arizona v. Johnson*, 555 U.S. 323, 333 (2009) ("An officer's inquiries into matters unrelated to the justification for the traffic stop . . . do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop."). As for the time period following Raileanu's consent to search, Officer Bundy promptly called for back-up when Raileanu provided his consent, backup arrived only minutes later, and the search concluded within twelve to twenty minutes from the beginning of the stop. *Cf. United States v. Turvin*, 517 F.3d 1097, 1101, 1103–04 (9th Cir. 2008) (determining that a fourteen-minute stop was reasonable); *United States v. Mayo*, 394 F.3d 1271, 1275–76 (9th Cir. 2005) (determining that a forty-minute stop was reasonable).

**4.** Next, Officer Bundy obtained Raileanu's voluntary consent to search his car. *See United States v. Patayan Soriano*, 361 F.3d 494, 501–02 (9th Cir. 2003) (explaining that, in deciding whether the defendant gave voluntary consent, the court should consider "(1) whether defendant was in custody; (2) whether the arresting officers had their guns drawn; (3) whether Miranda warnings were given;

3

(4) whether the defendant was notified that []he had a right not to consent; and (5) whether the defendant had been told a search warrant could be obtained" (quoting *United States v. Jones*, 286 F.3d 1146, 1152 (9th Cir. 2002)). Although Officer Bundy did not advise Raileanu that he was free to leave prior to the request for consent, Raileanu was not under arrest, and *Miranda* warnings were not required. Additionally, although Officer Bundy did not advise Raileanu of his right not to consent, he did not have his weapon drawn at any time during the traffic stop, and he never threatened to obtain a search warrant should Raileanu refuse consent.

As for Raileanu's claim that his consent to search was invalid because English is not his primary language, the district court credited the officers' account that he "responded appropriately to questions in English, followed instructions in English, and provided identification and registration when requested in English." Moreover, the district court found that "Raileanu did not ask for an interpreter or claim at any point . . . that he did not understand English." The district court's findings do not reflect error, much less "clear error." *See Palos-Marquez*, 591 F.3d at 1274.

**5.** Finally, although Officer Bundy provided inadequate *Miranda* warnings and thus the statements made to him must be excluded, Agent Adams' later *Miranda* warnings were complete and sufficient and warranted the admission of

Raileanu's statements to Adams. Specifically, although Officer Bundy omitted the advice that, if Raileanu could not afford an attorney, one would be appointed to represent him, Agent Adams read Raileanu his full *Miranda* rights, clearly advising him of the right to appointed counsel. Furthermore, at least one and a half to two hours separated administration of the two sets of warnings, which of course were not read by the same officer. *Cf. United States v. San Juan-Cruz*, 314 F.3d 384, 387–88 (9th Cir. 2002) (concluding that the defendant was not clearly informed of his *Miranda* rights, where the same officer provided contradictory warnings and it was not clear from the record how much time elapsed between the two warnings); *United States v. Connell*, 869 F.2d 1349, 1353 (9th Cir. 1989) (concluding that "[t]he subsequent statements . . . —that 'a lawyer *may* be appointed to represent you' . . . and that if [you] want but cannot afford a lawyer 'arrangements will be made for [you] to obtain a lawyer in *accordance with the law*'—did not clearly inform [the defendant] that if he could not afford an attorney one would be appointed for him prior to questioning, if he so desired").

    **AFFIRMED.**