


**IN THE SUPREME COURT OF GUAM**

**PEOPLE OF GUAM,**
Plaintiff-Appellee,

**v.**

**RAYLAND ALFONSO TOWAI,**
Defendant-Appellant.

Supreme Court Case No. CRA23-010
Superior Court Case No. CF0765-18

**OPINION**

**Cite as: 2024 Guam 9**

Appeal from the Superior Court of Guam
Argued and submitted on April 29, 2024
Mangilao, Guam

Appearing for Defendant-Appellant:
Braddock J. Huesman, *Esq.*
Razzano Walsh & Torres, P.C.
139 Murray Blvd., Ste. 100
Hagåtña, GU 96910

Appearing for Plaintiff-Appellee:
Nathan M. Tennyson, *Esq.*
Acting Deputy Attorney General
Office of the Attorney General
590 S. Marine Corps Dr., Ste. 801
Tamuning, GU 96913



BEFORE: ROBERT J. TORRES, Chief Justice; F. PHILIP CARBULLIDO, Associate Justice; and KATHERINE A. MARAMAN, Associate Justice.

**TORRES, C.J.:**

**[1]** Defendant-Appellant Rayland Alfonso Towai appeals his conviction of Assault as a Misdemeanor. He argues that his Fifth Amendment rights were violated when officers subjected him to non-*Mirandized* custodial interrogation and, again, when his statements made during this custodial interrogation were presented at trial. He also argues that he received ineffective assistance of counsel because his trial counsel did not move to suppress these statements. Although we agree with Towai that his Fifth Amendment rights were violated and his trial counsel was deficient for not moving to suppress his statements made in violation of these rights, the errors did not affect his substantial rights. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

**[2]** On Christmas Eve of 2018, Towai was living with his then-girlfriend, Evelyn Gregorio ("Evelyn"), in her home on Ysengsong Road. That night, Towai and Evelyn were at the home preparing to celebrate the holiday. Evelyn's friend Hideko Aowar ("Hildago")[1] was also at the home to celebrate Christmas Eve that night. There was no electricity at the home, and Evelyn had a small "Energizer LED night light" ("light," "lantern," or "lamp") that they used in addition to candles as the only light sources that night. Transcript ("Tr.") at 36, 47 (Jury Trial Day 1, Mar. 21, 2023). Because testimony differed and this court's analysis revolves around whether certain testimony should have been excluded, we separate this section based on the witness.

//

//

[1] It appears the court reporter was uncertain as to the proper spelling of this name; the transcript switches between "Hideko" and "Hildago." For purposes of this opinion, we will refer to this person as "Hildago."

### A. Evelyn's Testimony

**[3]** Evelyn testified that at some point that evening, Xavier Takao ("Xavier") arrived at the home. Xavier is Evelyn's first cousin, and he and Towai had known each other for a long time. After arriving, Xavier went to the back of the house where Towai was preparing fish for the evening. Shortly after, Towai came to the front of the house and told Evelyn to leave. Evelyn testified that Towai was "mad" when he told her to leave, so she got Hildago, and they went to a nearby bus stop. *Id.* at 84-86. After about an hour, Xavier exited the house and walked to the bus stop, where he asked for Evelyn's phone so he could call the ambulance. Evelyn said that Xavier had "a lot of blood on [his] shirt." *Id.* at 88. Evelyn, Hildago, and Xavier then walked up the road to a nearby neighbor's house to get help.

**[4]** Evelyn testified that she did not see Towai again until several weeks later, after he was released from jail. They were drinking together, and Evelyn asked him about her lamp; Towai told her he used it to hit Xavier.

### B. Officer Dodd's Testimony

**[5]** Officer Dodd was the only arresting officer who testified at trial. *Id.* at 50 (Officer Dodd testifying that Officer Benavente had "resigned from the Force and left the island"). He testified that, in response to a call about an aggravated assault, he and his partner, Officer Benavente, went to a house where Evelyn, Hildago, and Xavier were present. Officer Dodd found Xavier sitting on the porch, holding "a towel to the right side of his face," which appeared to be bleeding with "swelling and lacerations." *Id.* at 27. Shortly after, paramedics took Xavier to the hospital. Officers Dodd and Benavente then called Officer Santo Tomas for backup, and Officer Santo Tomas arrived at the house soon after.

**[6]** Then, around midnight, the three officers went to Evelyn's home to make a check for Towai. The home is "about a quarter acre Lot," and has "three structures on it." *Id.* at 32. To ensure they "covered all [their] avenues of approach," Officer Benavente went to the left, Officer Santo Tomas went straight, and Officer Dodd went to the right. *Id.* at 35. Officer Dodd heard Officer Benavente talking to someone, so he followed her voice until he came across her and Towai near the outhouse. Towai was lying on a "white folding plastic table . . . on the ground." *Id.*

**[7]** Officer Dodd testified that Towai was "[a] bit aggressive" when they found him; "[h]e was loud," and Officer Dodd "could smell the odor of an intoxicating beverage emitting from [Towai's] person and his breath when he spoke." *Id.* at 44. From here, the timeline as to who started the conversation appears inconsistent: Officer Dodd testified that Towai first asked the officers something to the effect of "Why are you here? Are you here because I hit that guy because he was bothering me?" *Id.* at 45. Officer Dodd then asked him "why he hit the guy" and "what he hit him with," and Towai responded that he hit Xavier with his "fist." *Id.* But later, on cross-examination, Officer Dodd agreed that "when Officer Benavente was speaking with [Towai], [he] came along and interjected . . . and . . . asked him why he hit Xavier." *Id.* at 53.[2]

**[8]** Then, Officer Dodd became worried that Towai was getting "a bit aggressive," so he had Officers Benavente and Santo Tomas secure him in handcuffs. *Id.* at 45-46. *But see id.* at 51-52 (Officer Dodd testifying that Towai was cooperative in his arrest). Officer Dodd testified that he then orally advised Towai of his rights, but Towai said that he knew his rights and that he did not want to talk to the officers. As the officers escorted Towai off the property, they passed by "broken

[2] At trial, defense counsel questioned Officer Dodd about whether it was appropriate that he asked Towai why he hit Xavier before reading him his rights, calling it an "incriminating question." Tr. at 53 (Jury Trial Day 1, Mar. 21, 2023). Officer Dodd replied that he felt it was okay to ask the question because he had no reason to believe that Towai did not feel that he could freely walk away at any time, so it was not an interrogation and simple questions were permitted. Officer Dodd claimed that at the start, the officers were just doing basic fact finding; when he noticed that the conversation could be moving into an incriminating area, he stopped to advise Towai of his *Miranda* rights.

pieces of the plastic light laying on the ground and the lamp."[3] *Id.* at 46. Officer Dodd testified that, in "a spontaneous utterance," Towai said, "I'm getting arrested because I slapped that guy with the light?" *Id.*

**C. Towai's Testimony**

**[9]** Towai testified on his own behalf, and there were several key differences in his version of events. He testified that on Christmas Eve, he and Evelyn were at home preparing for the night. Xavier showed up while he was preparing food in the back and sat nearby drinking beer. After a while, Towai asked Xavier to leave because he was "belligerent" and "drunk," Tr. at 74 (Jury Trial Day 3, Mar. 23, 2023), and Xavier went inside the house. When Towai later went into the house and saw that Xavier had not left, he asked Xavier "what he is doing inside the house." *Id.* at 56. Xavier told Towai that "he can do whatever he wants . . . . He picked up . . . two cans" and looked like he was about to hit Towai. *Id.* Towai testified that he then "punched [Xavier] in the mouth, and then . . . kicked him." *Id.* at 57. Towai said that Xavier fell on the glass table in the living room and was knocked out; there was a lot of blood. Towai said he splashed water on Xavier to wake him up, and when Xavier came to, Xavier left and said he would call the police.

**[10]** After Xavier left, Towai started drinking vodka and went to shower. He said that was when the lamp broke; he was rushing to the bathroom when "the black thing, the handle, came off" the lamp, and so he just left it. *Id.* at 58-59. He said that about three hours passed between the time Xavier left and the police arrived. Once the police arrived, Towai testified that he told them he hit Xavier with his hand. Towai testified that after he was handcuffed and they were passing by the broken lamp on the way to the car, he was the one who started asking the officers whether they thought he hit Xavier with the broken light. *Id.* at 59 ("I was the one who started asking the

[3] At trial, Evelyn testified that the lamp was not broken before the night of the incident. Tr. at 94 (Jury Trial Day 1).

question, . . . do you think I really hit him with that light, with the nighlight?"). *But see id.* at 94 (Towai testifying that when they passed by the lamp, "[t]he lady said that's the -- the weapon"). Most importantly, Towai testified that none of the officers ever read him his rights. *Id.* at 59.

**[11]** Towai testified that although he and Evelyn got together after he was released from jail, he did not tell her he hit Xavier with the lamp. He said that she asked him where the lamp was, and he told her that the police took it "because they think I hit Xavier with it." *Id.* at 99. He said that Evelyn and Officer Dodd are "all lying" that he ever said he hit Xavier with the lamp. *Id.* at 83.

**D. Xavier's Testimony**

**[12]** Xavier did not remember much from the night of the incident when he testified. But he stated that he went over to the home, and Towai hit him on the head with something hard and caused him to fall over. He said Towai was holding something "like a ruler or something heavy," and that was what Towai used to hit him. Tr. at 131 (Jury Trial Day 1). He testified that he did not provoke Towai. After he was hit, he went and found Evelyn, and they went to a neighbor's house.

**E. The Testimony of Doctors Kang and Castro**

**[13]** Two doctors testified at trial. Dr. Jiyeong Kang was Xavier's attending medical doctor from December 25–31, 2018. Dr. Kang described Xavier's injuries and said they could have been consistent with being hit by a baseball bat. Dr. Castro was the doctor who performed surgery on Xavier. Dr. Castro said Xavier had a broken jaw, as well as cheek and nasal fractures, among other injuries. He said the injuries could be consistent with getting hit by a bat or being punched in the face multiple times.[4]

[4] When asked whether he thought the injuries were consistent with being hit by a plastic lantern, Dr. Castro said he did not think so but noted he was not a physicist and that this opinion concerning a plastic lantern was "not based on really true science." Tr. at 65-66 (Jury Trial Day 2, Mar. 22, 2023).

**[14]** Towai was charged with Aggravated Assault (as a Third Degree Felony) under 9 GCA § 19.20(a)(2) ("Charge One") and Aggravated Assault (as a Third Degree Felony) under 9 GCA § 19.20(a)(3) ("Charge Two"), each with a Special Allegation of Possession or Use of a Deadly Weapon in the Commission of a Felony. He was found guilty of Assault (as a Misdemeanor) as a lesser included offense of Charge One and was sentenced to one year of imprisonment with credit for time served.[5] Towai timely filed a notice of appeal.

## II. JURISDICTION

**[15]** This court has jurisdiction over appeals from the Superior Court of Guam under 48 U.S.C.A. § 1424-1(a)(2) (Westlaw through Pub. L. 118-150 (2024)) and 7 GCA §§ 3107 and 3108(a) (2005).

## III. STANDARD OF REVIEW

**[16]** "An alleged violation of the Fifth Amendment is reviewed *de novo*." *People v. Muritok*, 2003 Guam 21 ¶ 10; *see also People v. Sangalang*, 2001 Guam 18 ¶ 10; *People v. Farata*, 2007 Guam 8 ¶ 15 ("This court reviews *de novo* the legal question of whether *Miranda* warnings were adequate."). If we find there is a Fifth Amendment error, we generally will reverse unless the error was harmless beyond a reasonable doubt. *See, e.g.*, *Muritok*, 2003 Guam 21 ¶ 23; *People v. Rasauo*, 2011 Guam 1 ¶ 24. But "[w]hen a defendant forfeits his claim by failing to make a timely objection, we must review that claim for plain error." *People v. Mendiola*, 2023 Guam 12 ¶ 16 (quoting *People v. Camacho*, 2016 Guam 13 ¶ 12). Because Towai did not make a timely objection to alleged *Miranda* violations, we review his Fifth Amendment claims for plain error.

**[17]** "Ineffective assistance of counsel claims are questions of law which this court reviews *de novo*." *People v. Taisacan*, 2023 Guam 19 ¶ 15 (quoting *People v. Moses*, 2007 Guam 5 ¶ 9).

---

[5] There was a second guilty verdict of Assault (as a Misdemeanor) as a lesser included offense of Charge Two, but it was dismissed during sentencing. RA, tab 142 at 1-2 (Judgment of Conviction, Sept. 8, 2023).

## IV. ANALYSIS

### A. Although Towai's Fifth Amendment Rights Were Violated, the Violation Did Not Affect His Substantial Rights

**[18]** Because Towai did not object to alleged *Miranda* violations at trial, he forfeited this claim. *See People v. Chong*, 2019 Guam 30 ¶ 10 ("[A] true waiver occurs only through an *intentional* relinquishment of an argument, while a forfeiture is the result of a *neglectful* failure to pursue an argument." (quoting *United States v. Johnson*, 415 F.3d 728, 730 (7th Cir. 2005))). "When a defendant forfeits his claim by failing to make a timely objection, we must review that claim for plain error." *People v. Mendiola*, 2023 Guam 12 ¶ 16 (citing *People v. Camacho*, 2016 Guam 13 ¶ 12). "Although we have 'discretion to review plain errors or defects affecting substantial rights, even when not raised at trial,' we exercise this discretion 'sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result.'" *People v. Bosi*, 2022 Guam 15 ¶ 46 (quoting *People v. Martin*, 2018 Guam 7 ¶ 11). "We will not reverse unless (1) there was an error; (2) the error is clear or obvious under current law; (3) the error affected substantial rights; and (4) reversal is necessary to prevent a miscarriage of justice or to maintain the integrity of the judicial process." *People v. Quitugua*, 2009 Guam 10 ¶ 11; *see also United States v. Olano*, 507 U.S. 725, 732 (1993).

#### 1. There was clear or obvious error under current law

**[19]** The first two prongs of the plain-error analysis require Towai to show (1) there was an error and (2) the error was clear or obvious under current law. Towai has met his burden on these two prongs.

**[20]** The Fifth Amendment states that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. The Fifth Amendment's right against self-incrimination and the procedures surrounding those rights are known as "*Miranda* rights," which

apply specifically to the "admissibility of statements obtained from an individual who is subjected to custodial police interrogation." *Miranda v. Arizona*, 384 U.S. 436, 439 (1966); *see also Farata*, 2007 Guam 8 ¶ 20. This is because during a custodial interrogation, there are "inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." *People v. Hualde*, 1999 Guam 3 ¶ 20 (quoting *Miranda*, 384 U.S. at 467). Thus, *Miranda* ensures that "suspects interrogated while in police custody must be told that they have a right to remain silent, that anything they say may be used against them in court, and that they are entitled to the presence of an attorney, either retained or appointed, at the interrogation." *Thompson v. Keohane*, 516 U.S. 99, 107 (1995) (citing *Miranda*, 384 U.S. at 444); *see also People v. Santos*, 2003 Guam 1 ¶ 45.

**[21]** According to Officer Dodd's testimony, Towai made several self-incriminating statements to police officers the night he was arrested. Several were made before he was handcuffed, including one apparently before the officers even asked him questions. Although testimony presents slightly different versions of this conversation, after reviewing the record, we summarize and paraphrase Towai's exchange with the police as follows:

> Towai: Why are you here? Are you here because I hit that guy because he was bothering me?
>
> Officer: Why did you hit the guy?
>
> Towai: He was on my property and was bothering me.
>
> Officer: What did you hit him with?
>
> Towai: My fist.

*See* Tr. at 45 (Jury Trial Day 1) (Officer Dodd describing the conversation); Tr. at 32-36, 42 (Jury Trial Day 3) (Officer Dodd again describing the conversation); Tr. at 98 (Jury Trial Day 3) (Towai testifying that he told the cops he hit Xavier with his fist). Thus, Towai's statement, "Why are you

here? Are you here because I hit that guy because he was bothering me?" ("First Statement"), was made before officers asked him any questions. His statements about Xavier being on his property and bothering him, and that he hit Xavier with his fist ("Second Statements") were made in response to police questioning.

**[22]** The other incriminating statement admitted at trial occurred after Towai was handcuffed. As the officers escorted a handcuffed Towai to the police car, they passed by the broken pieces of lamp on the ground. Towai appears to have "spontaneously" asked, "I'm getting arrested because I slapped that guy with the light?" ("Third Statement"). Tr. at 46 (Jury Trial Day 1); *see also* Tr. at 59 (Jury Trial Day 3) (Towai testifying "[he] was the one who started asking the question" about whether the officers thought he hit Xavier with the broken light). *But see* Tr. at 94 (Jury Trial Day 3) (Towai testifying he asked the question because when they passed by the lamp, "[t]he lady said that's the -- the weapon"). The admissibility of each statement depends on whether Towai was subject to custodial interrogation, in violation of his *Miranda* rights.

**[23]** An individual is "in custody when he or she is 'taken into custody or otherwise deprived of his freedom of action in any significant way.'" *Muritok*, 2003 Guam 21 ¶ 12 (quoting *Miranda*, 384 U.S. at 444). The custodial test includes looking at the circumstances surrounding the situation and assessing whether "a reasonable person [would] have felt he or she was not at liberty to terminate the interrogation and leave." *Santos*, 2003 Guam 1 ¶ 51 (quoting *Thompson*, 516 U.S. at 112). The "ultimate inquiry" is whether there was "a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *Id.* (quoting *Thompson*, 516 U.S. at 112).

**[24]** "While it is generally true that questioning that occurs in or around one's home 'may militate against a determination of custody,' this alone is not dispositive." *People v. Torre*, 2019

Guam 9 ¶ 13 (quoting *United States v. Brobst*, 558 F.3d 982, 995 (9th Cir. 2009)). "Even when questioned within the confines of one's home, a defendant may still be in custody for purposes of a *Miranda* analysis if 'the degree to which law enforcement officers dominated the scene' was sufficiently great." *Id.* (quoting *Brobst*, 558 F.3d at 995). When determining the degree to which law enforcement officers dominated the scene, courts generally consider factors such as: (1) how many officers were present,[6] (2) how the officers conducted their investigation,[7] and (3) who else was present.[8]

**[25]** "'Interrogation' in the context of *Miranda*, means 'questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.'" *Farata*, 2007 Guam 8 ¶ 36 (quoting *People v. Ichiyasu*, D.C.A. Crim. No. 8600001A, S.C. No. 171F-85, 1987 WL 109391, at *6 (D. Guam App. Div. Apr. 24, 1987)). "An interrogation is said to occur when the defendant, in custody, is the target of questions or statements, which the police can expect will elicit incriminating responses." *Id.* (quoting *People v. Quidachay*, Crim. No. 99997A, 1983 WL 29952, at *4 (D. Guam App. Div. Nov. 8, 1983)). An interrogation does not require direct questioning; it also includes "any words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response." *Id.* (quoting *Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980)).

---

[6] *See, e.g.*, *People v. Torre*, 2019 Guam 9 ¶ 14; *United States v. Craighead*, 539 F.3d 1073, 1085 (9th Cir. 2008) ("[T]he presence of a large number of visibly armed law enforcement officers goes a long way towards making the suspect's home a police-dominated atmosphere."); *Sprosty v. Buchler*, 79 F.3d 635, 638, 642 (7th Cir. 1996) (finding five officers, one of whom was visibly armed and in uniform, to contribute to a police-dominated environment).

[7] *See, e.g.*, *Torre*, 2019 Guam 9 ¶ 14 (finding that the road to defendant's house was blocked and a perimeter around the home was established to support the defendant being in custody); *Orozco v. Texas*, 394 U.S. 324, 325-26, 327 (1969) (finding defendant was "in custody" and "not free to leave" when four officers entered his bedroom while he was sleeping and began questioning him at 4 a.m.).

[8] *See, e.g.*, *Torre*, 2019 Guam 9 ¶ 14 (finding that the defendant was interrogated in the presence of his father to weigh against him being in custody); *Sprosty*, 79 F.3d at 641 (finding that the defendant was questioned in the presence of at least two other people to weigh against him being in custody).

### a. Towai's First Statement was not admitted in error because, although he was in custody, the statement did not result from police interrogation

**[26]** The totality of the circumstances indicate that Towai was "in custody" upon his first interactions with the police officers because the officers dominated the scene to a sufficiently great degree. Three officers drove to Towai's home around midnight. The property was almost completely dark as there was no electricity, so the officers split up to search the property for Towai. They found him lying on the ground outside and converged on him from different directions. A reasonable person at their home who was suddenly surrounded by police officers during the night would not feel free to leave. We conclude law enforcement officers dominated the scene to such an extent that it amounted to a restraint on freedom of movement of the degree associated with a formal arrest. Thus, Towai was in custody upon his first interaction with the officers and was in custody when he made his First Statement.

**[27]** Although Towai was in custody when he made his First Statement, to violate *Miranda*, the statement must have resulted from a police interrogation. *Farata*, 2007 Guam 8 ¶ 35 ("[T]he special procedural safeguards outlined in *Miranda* are required not where a suspect is simply taken into custody, but rather where a suspect in custody is subjected to interrogation." (quoting *Innis*, 446 U.S. at 300)). To be considered an interrogation, the police conduct must be "causally related to the confession." *Sangalang*, 2001 Guam 18 ¶ 14 (quoting *Colorado v. Connelly*, 479 U.S. 157, 164 (1986)). But "[a]ny statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence." *Miranda*, 384 U.S. at 478.

**[28]** Towai started conversation with the officers when he made his First Statement, asking, "Why are you here? Are you here because I hit that guy because he was bothering me?" Tr. at 45 (Jury Trial Day 1). No testimony, Towai's included, suggested that this statement was made because of police questioning or influence. The police had merely found Towai but had not asked

him questions about the crime or what happened. Because Towai's First Statement did not result from police pressure or influence, the statement was given freely and voluntarily and is admissible as evidence. There was no error in admitting the First Statement as it did not result from a custodial interrogation.

#### b. Towai's Second Statements were admitted in error because they resulted from custodial interrogation

**[29]** Towai was in custody the moment the officers surrounded him, and the Second Statements were made in response to police questioning. According to Officer Dodd, after Towai asked the officers if they were there because he hit the guy, Officer Dodd asked Towai "why he hit the guy." Tr. at 45 (Jury Trial Day 1). This is a direct police question that Officer Dodd should have known was likely to elicit an incriminating response. Officer Dodd next asked Towai "what he hit [the guy] with." *Id.* This, too, is a direct police question that a reasonable officer would have known could elicit an incriminating response.

**[30]** Because Officer Dodd's questions were causally related to the Second Statements and Towai was in custody during this exchange, the Second Statements were the result of a custodial interrogation. Because the officers had not advised Towai of his *Miranda* rights before the questioning, the circumstances surrounding the Second Statements violated Towai's *Miranda* rights, and it was an error to admit them at trial.

#### c. Towai's Third Statement was admitted in error because the People did not carry their burden of showing Towai waived his *Miranda* rights after being handcuffed

**[31]** Towai remained in custody and was handcuffed at the time of the Third Statement, "I'm getting arrested because I slapped that guy with the light?" He was subjected to interrogation once Officer Dodd began questioning him. Our conclusion that Towai was subjected to custodial interrogation is supported by the contention that he may have made the Third Statement in response

to Officer Benavente saying something about the lamp being the weapon. *See* Tr. at 94 (Jury Trial Day 3) (Towai testifying that Officer Benavente said "that's the -- the weapon" as they were passing the broken lamp and that is why he asked the Third Statement). *But see id.* at 56 (Towai also testifying that "[he] was the one who started asking the question" about whether the officers thought he hit Xavier with the broken light). By the time he made his Third Statement, Towai was subject to custodial interrogation, and any statements made without being *Mirandized* were inadmissible.

**[32]** Here, there is dispute over whether the officers informed Towai of his *Miranda* rights when they handcuffed him. Officer Dodd testified that after handcuffing Towai, he orally advised Towai of his rights, and Towai replied that he knew his rights and that he did not want to talk to the officers. Tr. at 46 (Jury Trial Day 1). Towai testified that he was not informed of his *Miranda* rights. Tr. at 59 (Jury Trial Day 3). No other officers or witnesses testified about the conveyance of *Miranda* rights, and no evidence that Towai signed a form waiving his *Miranda* rights was presented.

**[33]** A defendant may waive his Fifth Amendment privilege against self-incrimination, but the waiver must be made "voluntarily, knowingly and intelligently." *People v. Santos*, 2020 Guam 5 ¶ 13. "[T]he voluntary, knowing and intelligent nature of a *Miranda* waiver is to be gleaned from the totality of the circumstances," *id.* (alteration in original) (quoting *People v. Angoco*, 2007 Guam 1 ¶ 37), and the People bear the burden of proving by a preponderance of the evidence that the waiver was properly made, *id.* "A court reviewing such a waiver must 'examine the entire record and make an independent determination of the ultimate issue of voluntariness based on the totality of circumstances.'" *State v. Kazanas*, 375 P.3d 1261, 1279 (Haw. 2016) (quoting *State v. McKnight*, 319 P.3d 298, 312 (Haw. 2013)).

**[34]** In this case, the People did not present a signed waiver. Instead, they presented only the testimony of Officer Dodd, which directly conflicted with Towai's own testimony. After examining the entire record, we determine that the totality of the circumstances do not show by a preponderance of the evidence that Towai was properly *Mirandized* and waived his rights. Because Towai was subject to custodial interrogation and the People did not meet their burden to show he waived his *Miranda* rights before making the Third Statement, the Third Statement was admitted in error.

**2. Even though there was an error, Towai's substantial rights were not affected**

**[35]** "Even though an error is clear or obvious under current law, under plain error review we will not reverse unless the error affected the defendant's substantial rights." *People v. Hosei*, 2023 Guam 22 ¶ 68. The burden lies with the defendant to show the error affected his substantial rights, *People v. Felder*, 2012 Guam 8 ¶ 22, and the defendant must show there is a "reasonable probability that the error affected the outcome of the trial," *People v. White*, 2020 Guam 19 ¶ 10 (quoting *People v. Taisacan*, 2018 Guam 23 ¶ 37). As we have repeatedly emphasized, "Plain error is highly prejudicial error." *Hosei*, 2023 Guam 22 ¶ 60 (quoting *Quitugua*, 2009 Guam 10 ¶ 11).

**[36]** Towai has failed to show the errors affected his substantial rights because even if the Second and Third Statements were excluded, there is no reasonable probability that the outcome of the trial would have been different. We reach this conclusion based on the following evidence that was considered by the jury: (1) Towai's First Statement saying, "Why are you here? Are you here because I hit that guy because he was bothering me?", Tr. at 45 (Jury Trial Day 1); (2) Towai's testimony that he "punched [Xavier] in the mouth, and then . . . kicked him," Tr. at 56-57 (Jury Trial Day 3); (3) Evelyn's testimony that she left Towai and Xavier at her house alone and shortly

after, she saw Xavier "beaten up" with "a lot of blood on [his] shirt," Tr. at 82-83, 86 (Jury Trial Day 1); (4) Evelyn's testimony that Towai told her he used the lamp to hit Xavier, Tr. at 92 (Jury Trial Day 3); (5) Xavier's testimony that Towai hit him with something hard and heavy, Tr. at 131 (Jury Trial Day 1); (6) testimony that Xavier was beaten up and had to spend six days in the hospital after leaving Towai's house, Tr. at 9-10 (Jury Trial Day 3); and (7) testimony from two doctors that Xavier's medical records showed the injuries were consistent with being hit in the face with an object or being punched, *id.* at 19.

**[37]** Even if Towai's First, Second, and Third Statements were suppressed, and neither Towai nor Officer Dodd testified,[9] the jury would still have had more than enough evidence from Evelyn, Xavier, and the two doctors to have found that Towai committed assault. There is simply not a "specific showing of prejudice" here to persuade us that Towai's substantial rights were affected. *See People v. Hill*, 2018 Guam 3 ¶ 13.

**[38]** We cannot say that but for these errors, Towai "probably would have been acquitted" of all charges, including assault. *See People v. De Soto*, 2016 Guam 12 ¶ 67 (quoting *People v. Fegarido*, 2014 Guam 29 ¶ 41). Although Towai faced two charges of Aggravated Assault (as a Third Degree Felony), each with a Special Allegation of Possession or Use of a Deadly Weapon in the Commission of a Felony, he was convicted on the lesser included offense of Assault (as a Misdemeanor). Towai's Third Statement was the only statement where he mentioned potentially hitting Xavier with the lamp. But since Towai was not convicted on a charge with a Special

---

[9] Towai argues that if his "statements had been suppressed, there may not have been a need for him to testify, and this would have made it far less likely that the government could have proved its case. A suppression hearing also would have clarified the testimony of the police officers as well as the Record here." Appellant's Br. at 14-15 (Feb. 12, 2024). However, if Towai had not testified, then he would not have been able to bring in evidence about self-defense, which appears to have been his only avenue for acquittal.

Allegation of Possession or Use of a Deadly Weapon in the Commission of a Felony, the admission of his Third Statement did not affect the outcome of his trial.

**[39]** Thus, Towai fails to meet his burden of showing that his substantial rights were affected.

### B. Although Towai's Counsel Performance Was Deficient in Not Moving to Suppress His Statements, this Deficiency Did Not Prejudice Towai

**[40]** Although we generally hold that ineffective assistance of counsel claims may be brought on direct appeal, they are "more properly" brought on a petition for a writ of habeas corpus since "the trial record often lacks a sufficient evidentiary basis as to what counsel did, why it was done, and what, if any, prejudice resulted." *People v. Campbell*, 2006 Guam 14 ¶ 47. But "the merits of an ineffective assistance claim may be appropriate for direct review if the record is sufficiently complete to make a proper finding." *Id.*

**[41]** To establish ineffective assistance of counsel, a defendant must show: (1) trial counsel's performance was deficient, and (2) this deficiency prejudiced the defendant and resulted in the denial of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *People v. Borja*, 2017 Guam 20 ¶ 15 (citing *People v. Quintanilla*, 1998 Guam 17 ¶ 8). "High deference is given when reviewing an attorney's performance." *Moses*, 2007 Guam 5 ¶ 42 (citing *People v. Leon Guerrero*, 2001 Guam 19 ¶ 11).

#### 1. Towai demonstrated deficient performance by trial counsel

**[42]** "[T]he proper standard for attorney performance is that of reasonably effective assistance." *Strickland*, 466 U.S. at 687. A convicted defendant must show that his trial counsel's "representation fell below an objective standard of reasonableness." *People v. Titus*, 2020 Guam 16 ¶ 21 (quoting *Strickland*, 466 U.S. at 688). Towai argues deficient performance because trial counsel should have moved to suppress his statements obtained in violation of *Miranda*. Appellant's Br. at 14 (Feb. 12, 2024). "[F]ailure to file a suppression motion does not constitute

*per se* ineffective assistance of counsel . . . ." *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986). Still, "[i]n the context of a potential pretrial motion[,] counsel has a duty to research the law, investigate the facts and make the motion in circumstances where a diligent and conscientious advocate would do so." *Leon Guerrero,* 2001 Guam 19 ¶ 14 (quoting *People v. Gonzalez,* 75 Cal. Rptr. 2d 272, 275 (Ct. App. 1998)). "[A] particular decision not to investigate must be directly assessed for reasonableness . . . , applying a heavy measure of deference to counsel's judgments." *Kimmelman*, 477 U.S. at 384 (quoting *Strickland*, 466 U.S. at 691).

**[43]** Although high deference is given to trial counsel's judgment, and we find no issue with the rest of counsel's representation of Towai, there was no "sound trial strategy" for counsel to not pursue a suppression hearing in this case. *See Strickland*, 466 U.S. at 689. Towai was in custody once the officers found him at the home, and almost all his statements were made while subject to custodial interrogation. In these statements, Towai confessed to hitting Xavier and implied that he did so with the lamp. These statements were made in violation of Towai's Fifth Amendment rights, and no reasonable strategy would require admitting these statements at trial.

**[44]** We find Towai demonstrated deficient performance of his trial counsel for the failure to seek a suppression hearing. There is no sound trial strategy for not moving to suppress a defendant's incriminating statements obtained in violation of his Fifth Amendment rights.

**2. Towai failed to demonstrate how any deficiencies prejudiced his case**

**[45]** Even though trial counsel's performance was deficient, an ineffective assistance of counsel claim still requires Towai to show how this deficiency prejudiced him and resulted in the denial of a fair trial. To establish prejudice, a convicted defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the [trial] would have been different. A reasonable probability is a probability sufficient to undermine confidence in the

outcome." *People v. Meseral*, 2014 Guam 13 ¶ 47 (alteration in original) (quoting *Strickland*, 466 U.S. at 694).

**[46]** Towai argues that "[s]uppression of his statements may have afforded [him] the ability to avoid taking the stand at trial in his own defense," which "would have made it far less likely that the government could have proved its case." Appellant's Br. at 14-15. Towai states that suppressing his statements "also would have clarified the testimony of the police officers" and kept Officer Dodd from testifying about his statements. *Id.* Even if we accepted Towai's premise that a suppression hearing would have resulted in keeping both Towai and Officer Dodd off the stand at trial, there was still sufficient evidence to sustain a conviction for misdemeanor assault. Evelyn testified that she left Towai and Xavier at her house alone and shortly after saw Xavier "beaten up" with "a lot of blood on [his] shirt." Tr. at 82-83, 86 (Jury Trial Day 1). Xavier testified that Towai hit him on the head with something hard and caused him to fall over. *Id.* at 131, 136. And Drs. Kang and Castro testified that Xavier spent about six days in the hospital after leaving Towai's house, and that Xavier's injuries were consistent with being hit with something hard. *See* Tr. at 19-20, 38, 64-65 (Jury Trial Day 2, Mar. 22, 2023).

**[47]** Even if trial counsel had successfully suppressed all of Towai's statements, Towai has not shown that the outcome of the trial would have been different. Therefore, Towai was not prejudiced by trial counsel's deficient performance, and his claim of ineffective assistance of counsel fails.

## V. CONCLUSION

**[48]** Although Towai's Fifth Amendment rights were violated when officers entered his property during the night, surrounded him, and asked him incriminating questions without first *Mirandizing* him, we find the improper admission of these statements did not affect his substantial

rights. Although Towai was charged with aggravated assault for hitting Xavier with a lamp, he was ultimately convicted of misdemeanor assault. Xavier testified that Towai hit him on the head with something hard, and two doctors testified that Xavier's injuries were consistent with being hit with something hard. Even if all of Towai's statements had been suppressed, the outcome likely would not have changed. Similarly, although Towai's trial counsel was deficient in failing to move to suppress statements obtained in violation of the Fifth Amendment, we find no prejudice, as the outcome of the trial would not have changed even if these statements had been suppressed. Thus, we **AFFIRM** Towai's judgment of conviction.

/s/
F. PHILIP CARBULLIDO
Associate Justice

/s/
KATHERINE A. MARAMAN
Associate Justice

/s/
ROBERT J. TORRES
Chief Justice